IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| **RANDY BONOGOFSKY,** ) | |
| ) | Cause No. CV-08-32-BLG-RFC |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| **BIG HORN COUNTY SHERIFF'S** ) | |
| **DEPARTMENT, AND JOHN DOES** ) | |
| **1-49,** ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff has filed a Second Amended Complaint against Big Horn County Sheriff's Department and their agents/employees alleging claims of (1) Count I - Negligence; (2) Count II - State Constitutional Violations (Excessive Force); (3) Count III - Negligence Per Se; and (4) Count IV - Civil Rights violations under 42 U.S.C. § 1983.

Presently before the Court is Big Horn County Sheriff's Department's Motion for Partial Summary Judgment on Plaintiff's Claims of Negligence Per Se, and Civil Rights violations under 42 U.S.C. § 1983.

1

## FACTUAL BACKGROUND

On June 30, 2005, at Fort Smith, within the boundaries of Big Horn County, Montana, Plaintiff Randy Bonogofsky was at his residence when now ex-wife Sheila Bonogofsky, son, and another juvenile arrived at his residence. An argument ensued between Plaintiff and Sheila that resulted in her pointing a rifle at Plaintiff and allegedly firing at Plaintiff. Plaintiff managed to wrestle the rifle from his wife without physical injury to himself. However, the argument and subsequent physical altercation caused Plaintiff's son to be so angered as to point a .22 handgun at the Plaintiff. Plaintiff managed to diffuse the situation and Plaintiff's then-wife and two juveniles left Plaintiff's residence in separate vehicles.

Almost immediately after the incident, Big Horn County Dispatch received two 911 calls from Plaintiff's neighbors describing the incident. Officers were then dispatched to Plaintiff's residence. The information that the Officers received from dispatch resulted in an unclear perception as to who was the domestic abuse victim and who was the perpetrator. The only confirmed information was that a firearm was involved. Consequently, when the Officers arrived at Plaintiff's residence, they directed him to exit his residence, ordered him to lay on the ground, at which point the Officers handcuffed him and placed him in a patrol car. When it was clear that Plaintiff was the victim and not the perpetrator, he was released.

2

Plaintiff contends that prior to being directed to the ground, he informed the Officers that he was recovering from back surgery.  Further, he states that during the course of the handcuffing, an officer placed a knee in his back.  Lastly, Plaintiff states that he was forced to sit for over an hour with his hands cuffed behind his back.  From the time he was taken into custody and released, Plaintiff alleges claims of physical and emotional injury arising from the Officers' negligence and use of excessive force.  In addition, Plaintiff alleges that Defendants were negligent in failing to investigate the circumstances of the event prior to taking him into custody.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In considering a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  If the moving party does not bear the burden of proof at trial, he or she may discharge this burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of

evidence to support the non-moving party's case." *Celotex Corporation v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## I. Summary Judgment on Plaintiff's Claims of Negligence Per Se

Plaintiff has alleged in his Second Amended Complaint under Count III, Negligence per se as follows:

18. That the Defendants, in effecting the warrantless arrest of the Plaintiff, violated the provisions of § 46-6-311(1), M.C.A. and § 46-6-311(2)(b), M.C.A., and failed to determine that the Plaintiff was a victim of Partner/Family Member Assault, and further, that there was no issue of mutual aggression justifying the arrest of Plaintiff.

19. That the Defendants violated the provisions of § 46-6-312, M.C.A. by effecting a warrantless arrest of the Plaintiff proximately resulting in injuries to Plaintiff.

Under Montana law, a plaintiff must prove five elements in order to establish negligence per se: (1) the defendant violated a particular statute; (2) the Legislature intended the statute to protect a specific class of persons; (3) the plaintiff is a member of that class; (4) the Legislature intended the statute to prevent plaintiff's

4

injury; (5) the Legislature intended to regulate a member of defendant's class.

*Olson v. Schumaker Trucking and Excavating Contractors, Inc.,* 347 Mont. 1, 17, 196 P.3d 1265, 1277 (2008).

Montana Code Annotated §46-6-311(1) and (2)(b) state as follows:

> (1) A peace officer may arrest a person when a warrant has not been issued if the officer has probable cause to believe that the person is committing an offense or that the person has committed an offense and existing circumstances require immediate arrest.
>
> (2)(b) When a peace officer responds to a partner or family member assault complaint and if it appears that the parties were involved in mutual aggression, the officer shall evaluate the situation to determine who is the predominant aggressor. If, based on the officer's evaluation, the officer determines that one person is the predominant aggressor, the officer may arrest only the predominant aggressor. A determination of who the predominant aggressor is must be based on but is not limited to the following considerations, regardless of who was the first aggressor:
>> (i) the prior history of violence between the partners or family members, if information about the prior history is available to the officer;
>> (ii) the relative severity of injuries received by each person; (iii) whether an act of or threat of violence was taken in self-defense;
>> (iv) the relative sizes and apparent strength of each person;
>> (v) the apparent fear or lack of fear between the partners or family members; and
>> (vi) statements made by witnesses.

Montana Code Annotated § 46-6-312 states as follows:

> A peace officer making an arrest without a warrant shall inform the person to be arrested of the officer's authority, of the intention to arrest

5

>that person, and of the cause of the arrest, except when the person to be arrested is actually engaged in the commission of or in an attempt to commit an offense or is pursued immediately after its commission, after an escape, or when the giving of the information will imperil the arrest.

Probable cause existed for the actions taken toward Plaintiff. Probable cause exists when the facts and circumstances within an officer's personal knowledge acquired at the time through his senses, or inferences properly drawn from such knowledge, are "sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Probable cause is not defeated even if the facts on which the officers base their conclusions that a suspect may have committed a crime turn out to be incorrect. It has been recognized that when there is a challenge to whether the police reasonably believed that the person they are arresting is the person for whom they have probable cause to arrest, "sufficient probability, but not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Tibbs v. City of Chicago*, 469 F.3d 661, 664 (7th Cir. 2006), quoting *Hill v. California*, 401 U.S. 797, 804 (1971).

There is no question that officers had probable cause when they took Plaintiff into custody in an attempt to secure the scene of a crime and protect officers and the

public.  The probable cause finding defeats Plaintiff's claims of negligence per se.  The undisputed facts in this case demonstrate that Big Horn County Dispatch received two 911 calls from Plaintiff's neighbors describing the incident involving a firearm.  Officers were dispatched to Plaintiff's residence with information that a firearm had been used.  When the Officers arrived at the Plaintiff's residence, they directed him to exit his residence, ordered him to lay on the ground, at which point the Officers handcuffed him and placed him in a patrol car.  Once the situation was stabilized and it was clear that Plaintiff was the victim and not the perpetrator, he was released.

It is reasonable under the circumstances for the officers to take Plaintiff into custody until they were able to accurately determine all facts surrounding the gun call.  Law enforcement would need to investigate to ensure a potentially volatile situation was stabilized.  Plaintiff was released when it was determined that he had not committed a crime.

Further, this Court cannot find any authority to support Plaintiff's contention that in enacting Mont. Code Ann. §§ 46-6-311 or 46-6-312, that the Legislature intended the statute to protect a specific class of persons or that Plaintiff is a member of that class.  There is no basis to conclude from these statutes that the Legislature intended the statutes to prevent Plaintiff's injuries that he alleges he

7

sustained in this case or that the Legislature intended the statutes to regulate a member of Defendant's class.

## II. Summary Judgment on Plaintiff's Claims of Civil Rights violations under 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 creates a cause of action to remedy deprivations of constitutional rights by persons acting under the authority of state law.  With regard to municipal liability, while a governmental entity cannot be held vicariously liable under § 1983 for the constitutional violations of its employees, it can be held liable when action taken pursuant to official municipal policy caused a constitutional tort. *Christie v. Iopa,* 176 F.3d 1231, 1235 (9th Cir. 1999) *citing Monell v. Department of Social Serv. of N.Y.,* 436 U.S. 658, 694 (1978).  "The official policy requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id., citing Pembaur v. City of Cincinnati,* 475 U.S. 469, 479-8 (1986) (internal quotations omitted).

Specifically, a § 1983 plaintiff may establish municipal liability in one of three ways.  First, the plaintiff may prove that a Department employee committed the alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom which constitutes the 'standard operating

procedure' of the local government entity." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Monell*, 436 U.S. at 690-91. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *McKinley v. City of Eloy*, 705 F.2d 1110, 1116 (9th Cir. 1983). Whether a particular official has final policy-making authority is a question of state law. *See Jett*, 491 U.S. at 737; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-24, 108 S. Ct. 915, 924, 99 L. Ed. 2d 107 (1988). Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. *See Praprotnik*, 485 U.S. at 127; *Hammond v. County of Madera*, 859 F.2d 797, 801-02 (9th Cir. 1988).

Moreover, to establish municipal liability under § 1983, a plaintiff must show that: (1) he was deprived of a constitutional right; (2) the municipality has a policy; (3) the policy amounts to deliberate indifference to plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

First, the plaintiff may prove that a Department employee committed the alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Monell*, 436 U.S. at 690-91.  Plaintiff has completely failed to demonstrate that an officer committed an alleged constitutional violation pursuant to a  formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local government entity.

Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy.  *See Pembaur*, 475 U.S. at 480-81 (1986).  Whether a particular official has final policy-making authority is a question of state law.  *See Jett*, 491 U.S. at 737.   In this case, the deputies on the scene at the time Plaintiff was being taken into custody were Deputy Sheriff Windburn and Reserve Deputy Jeffson.  Neither of these deputies are officials who have final policy-making authority for the Department.

Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.  Plaintiff cannot establish that any allegedly unconstitutional conduct was

10

ratified by a policymaking official for purposes of establishing liability on the part of the Department under § 1983.

In order to show ratification, a plaintiff must prove that the "authorized policymakers approve a subordinate's decision and the basis for it. *Praprotnik*, 485 U.S. at 127 (1988). Ratification requires, among other things, knowledge of the alleged violation. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). A policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification. *Id*. Instead, a plaintiff must prove that the policymaker approved the subordinate's acts. *Id*. Even a policymaker's refusal to overrule a subordinate's completed acts does not constitute approval. *Id*.

Based upon the undisputed facts as presented by Plaintiff, he cannot establish that unconstitutional conduct was ratified by the Department for purposes of triggering § 1983 liability, as a matter of law. Plaintiff cannot even demonstrate that a policymaker ratified any allegedly unconstitutional conduct on the part of the individual officers toward Plaintiff. Plaintiff argues that the cooperative arrangement between the Department and the National Park Service and Bureau of Indian Affairs to respond to emergency calls constitutes a policy pursuant to which he was injured for purposes of § 1983 liability. This argument is flawed. There was no formal policy or custom that regularly results in the type of injury claimed by

11

Plaintiff and there is no evidence that the Department regularly injures people during handcuffing pursuant to an official policy or custom.

## CONCLUSION

Based upon the foregoing, IT IS HEREBY ORDERED that Defendant Big Horn County Sheriff's Department's Motion for Partial Summary Judgment [*doc. 53*] is **GRANTED**.  Count III - Negligence Per Se; and Count IV - Civil Rights violations under 42 U.S.C. § 1983; of the Second Amended Complaint are **DISMISSED.**

Dated this First Day of June, 2010.

                                          _/s/ Richard F. Cebull_____
                                          Richard F. Cebull
                                          United States District Judge